IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| PROVIDENT PHARMACEUTICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMNEAL PHARMACEUTICALS, LLC, et al., <br><br> Defendants. | Civil Action Number 3:08–CV–393 |

### **MEMORANDUM OPINION**

THIS MATTER comes before the Court on a Motion to Dismiss based on a Lack of Personal Jurisdiction and for Failure to State a Claim (Docket No. 54) filed by Defendants Satish Patel and Orit Laboratories L.L.C. For the reasons stated below, Defendants' Motion to Dismiss is GRANTED on the grounds that this Court lacks personal jurisdiction over these Defendants.

### I. BACKGROUND

A. Procedural Background

In 2004, Amneal Pharmaceuticals ("Amneal"), a Delaware company with its principal place of business in Paterson, New Jersey, and Provident Pharmaceutical ("Provident"), a Virginia corporation, entered into an agreement to manufacture and

distribute two generic drugs, Metformin[1] and Benzonatate.[2] The relationship between the parties deteriorated over time and resulted in Provident's filing of a Complaint against Amneal, Chintu Patel, Chirag K. Patel, Satish P. Patel ("Patel"), Orit Laboratories, L.L.C. ("Orit"), and Tish Technologies, L.L.C. on June 25, 2008.[3] On August 25, 2008, pursuant to Provident's Notice of Dismissal, Amneal, Chintu Patel, and Chirag K. Patel were dismissed as parties. Amneal, Chintu Patel, and Chirag K. Patel are currently in arbitration discussions as per the terms of their agreements.[4]

The remaining parties to the current action are Patel and Orit.[5] As such, the remaining counts in the Complaint are: Count V – Statutory Conspiracy, and Count VI – Common Law Conspiracy. In these counts, Provident seeks judgment in an amount in excess of $75,000, the costs and expenses of suit, reasonable attorneys' fees, and $1,000,000 in punitive damages specific to the common law conspiracy claim.

---

[1] Metformin is an oral medication used to treat type two diabetes. Amneal manufactures, packages, and labels Metformin for Provident. Provident distributes and sells Metformin to chain stores, wholesalers, and distributors.

[2] Benzonatate is an oral medication that is used to relieve coughs due to colds and influenza. Benzonatate is manufactured by Swiss Caps, located in Kirchberg, Switzerland, and sold in bulk to Amneal. Amneal packages and labels Benzonatate for Provident. Provident distributes and sells Benzonatate to chain stores, wholesalers, and distributors.

[3] The only parties to the Metformin and Benzonatate Agreements were Provident and Amneal. However, the suit was filed against Amneal, Chintu Patel, Chirag K. Patel, Satish P. Patel, Orit Laboratories, L.L.C., and Tish Technologies, as co-conspirators and as agents of their representative corporations.

[4] Chintu Patel is a party to the arbitration in his capacity as President of Amneal. Chirag K. Patel is a party to the arbitration in his capacity as Amneal's Executive Vice President and Chief Financial Officer.

[5] Defendant Tish Technologies L.L.C. was dismissed by Plaintiff's Notice of Dismissal so Ordered by this Court on October 21, 2008.

Defendants Patel and Orit filed the current Motion to Dismiss on two grounds: lack of personal jurisdiction and for failure to state a claim.

B. Factual Background

Per the terms of the agreements between Provident and Amneal, Provident agreed to fund the development of an abbreviated new drug application ("ANDA") for Metformin and Benzonatate. In return, Amneal gave Provident exclusive rights to market Metformin throughout the world for a minimum of five years and Benzonatate throughout the United States.[6] The term of the Benzonatate Agreement was indefinite.

The parties agreed to a Profit Sharing Formula in the Benzonatate Agreement. The formula distributed the profits amongst all of the parties, including Amneal, Satish Patel ("Patel"), Tish Technologies, L.L.C., Orit Laboratories, LLC ("Orit"), Swiss Caps AG, and Provident. Provident was to receive a fee of 30% which would be deducted prior to the profit sharing calculations. Net profits were then to be divided 30% to Amneal, 30% to Provident, and 40% to Swiss Caps. Pursuant to the Agreements, Provident has expended approximately $750,000[7] to fund the ANDAs for these projects.

After Amneal found additional investors and capital near the end of 2006, Provident alleges that Amneal, Patel, Tish Technologies, Orit, and Swiss Caps began to use numerous illegal and dishonest tactics to attempt to force Provident to: (1)

---

[6] In early 2004, Amneal was a start-up company interested in becoming a manufacturer and packager of generic pharmaceutical drugs. A generic drug company must have an ANDA before it can sell a given drug, which it obtains from the FDA.

[7] Provident expended approximately $550,000 on the Metformin Agreement and approximately $200,000 on the Benzonatate Agreement.

3

rewrite the Profit Sharing Formula to benefit Defendants; and (2) agree to forego Provident's exclusive marketing and distribution rights, and allow Amneal and its newly acquired affiliates and subsidiaries to market and distribute both Benzonatate and Metformin.  On June 27, 2008, Patel, in his capacity as President of Orit, and as an individual, appeared at a meeting in Richmond, Virginia, to discuss issues related to the contracts with Provident.[8]  Provident alleges that at this meeting Defendants made overt acts in furtherance of their conspiracy to damage Provident's reputation and to make Provident breach the contract for their own financial purposes.  (Pl. Mem. in Opp'n to Mot. to Dismiss 4.)

## II.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A.  Standard of Review

In a Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12 (b)(2), Plaintiff bears the burden of establishing personal jurisdiction over Defendants by a preponderance of the evidence.  Mylan Labs., Inc. v. Akzo, 2 F.3d 56, 59–60 (4th Cir. 1993).  However, Plaintiff is given the benefit of "favorable inferences" from any documents filed with the case, Reynolds Metals Co. v. FMALI, Inc., 862 F. Supp. 1496, 1498 (E.D. Va. 1994), and the most favorable inferences must be drawn in favor of jurisdiction.  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Pearson v. White Ski Co., 228 F. Supp. 2d 705, 707 (E.D. Va. 2002).

B.  Analysis

---

[8] Provident asserts that Patel attended the meeting as an individual, based on his personal financial interest in the proceedings, and in his capacity as Orit's President and CEO.

4

In order to have personal jurisdiction over a defendant, the court must conduct a two-part analysis. Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982). The first step is whether the Virginia long-arm statute provides for proper jurisdiction. See Va. Code Ann. §§ 8.01-328.1(A); id. The second step is whether this Court's exercise of jurisdiction comports with due process through sufficient minimum contacts with the forum, and whether jurisdiction offends "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F. Supp. 2d 545, 549 (4th Cir. 2004). The Virginia long-arm statute extends jurisdiction "to the extent permissible under the due process clause." English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990). For that reason, the two inquires are interrelated. See Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971) ("It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause."). However, the Fourth Circuit still requires that a specific provision of the long-arm statute be pled because the long-arm provisions are not meaningless. New Wellington Financial Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294–95 n.6 (4th Cir. 2005).

To establish minimum contacts, the contacts must be such that the non-resident defendant "purposefully availed" itself of the privilege of the laws of the forum, to ensure that the non-resident defendant has warning that their activities may subject them to litigation within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); Hanson v. Denckla, 357 U.S. 235, 253 (1958);

Peanut Corp., 696 F.2d at 314.  Virginia is a "single act" state, which means that a single act of transacting business can give rise to a cause of action.  D'Addario v. Geller, 264 F. Supp. 2d 367, 379 (E.D.Va. 2003) (citing Metzger, 901 F.2d at 38).

Specific jurisdiction is alleged in this matter because the Complaint asserts that the cause of action "arises out of" or "relates to" Defendants' contacts with the forum state.  Burger King, 471 U.S. at 472–73; Reynolds, 301 F. Supp. 2d at 549–50.  To determine specific jurisdiction, the Court must analyze "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  Mitrano v. Hawes, 377 F.3d 402, 406–07 (4th Cir. 2004) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

1.  Virginia long-arm statute

Plaintiff asserts that jurisdiction is proper over Patel and Orit under Virginia long-arm statute section 8.01-328.1(A)(3) which deems personal jurisdiction proper when a person "caused tortious injury by an act or omission" within Virginia, directly or by an agent.  Va. Code Ann. § 8.01-328.1(A)(3).  The act allegedly causing the tortious injury was Defendants' "overt act in furtherance of the conspiracy by attempting to pressure Provident to modify the Benzonatate Agreement to the benefit of the conspirators, which caused tortious injury to Provident."  (Pl. Mem. in Opp'n 8; see Compl. ¶¶ 70–78, 88, 151, 152, 155, 156.)  To be within the scope of section (A)(3), Plaintiff must allege that "one essential act of the alleged tort occurred in Virginia."  Decision Insights, Inc. v. Quillen, No. 05–0335, 2005 WL 2757930, at *6 (E.D. Va. Oct. 21, 2005) (citing Brown v. Am. Broadcasting Co., 704 F.2d 1296, 1300

6

(4th Cir. 1983)). While there is no tort alleged against these specific defendants, the claim being asserted is that Patel and Orit, through Patel as its agent, caused injury to another's business through their agreements with the now dismissed Defendants and this constitutes statutory conspiracy. See Quillen, 2005 WL 2757930, at *4 (holding that conspiracy to injure a business can be considered a tortious injury).

One of the few decisions regarding conspiracy as it relates to section (A)(3) is the unpublished case of Decision Insights, Inc. v. Quillen, where the Court found no personal jurisdiction over the defendants merely by attending an allegedly conspiratorial meeting. In Quillen, the actions taken by the defendants were not done in their capacity as representatives of the foreign corporation and the decisions made at the meeting, were ultimately helpful, not harmful, to the resident corporation. 2005 WL 2757930, at *4. The Court held that because there was no agreement between the actors and the foreign corporation, the actions taken could not be enough to constitute overt acts in furtherance of a conspiracy, in order to satisfy jurisdiction under section (A)(3). Id., at *6. In the present case, the only act within the Commonwealth was the meeting attended by Defendants. This Court fails to see how the discussion at this meeting caused tortious injury. There was no unlawful act, no tort, and no force committed by Defendants at the meeting. The attendees of the meeting, were simply attempting to renegotiate a contract, which is clearly a legal act. In fact, the meeting did not result in any form of renegotiation; any attempt by Defendants to persuade Provident to alter the contract failed. Because there was no tortious injury to Provident's trade or business by the innocent act of attempting to renegotiate a contract within the state, Defendants' actions do not fall under the provisions of the Virginia long-arm statute, section (A)(3). Further,

as stated at the hearing, Defendants' actions can in no way be construed to fall under any other provisions of the long-arm statute. For these reasons, jurisdiction is not proper under the Virginia long-arm statute.

2. Due Process considerations

While this Court finds there is no personal jurisdiction under the Virginia long-arm statute, there is even less justification behind exercising jurisdiction when considering the requirements of due process. Courts analyze the due process requirements to decide if jurisdiction in Virginia "does not offend traditional notions of fair play and substantial justice." Am. Online v. Huang, 106 F. Supp. 2d 848, 853 (E.D. Va. 2000). As stated above, the critical factors are the extent Patel and Orit availed themselves of the privilege of doing business in Virginia, whether the claims arise out of their contacts in Virginia, and whether jurisdiction in Virginia is constitutionally reasonable. In this case, Patel and Orit, through Patel's representation as the President of Orit, came into Virginia on June 27, 2008, with the other Defendants in order to discuss the Benzonatate Agreement with Provident. In the Complaint, Provident lists the specific acts it views as overt acts in furtherance of the conspiracy, but fails to list the June 27, 2008 meeting as one of these acts. The list includes:

> (1) making false statements regarding Provident's obligations under the Benzonatate Agreement and alleging Provident was in breach of the purported obligations in order to pressure Provident to change the terms of the Benzonatate Agreement to terms more favorable to Defendants; (2) purporting to terminate the Metformin Agreement in order to pressure Provident to change the terms of the Benzonatate Agreement to terms more favorable to Defendants; (3) refusing to order or supply API in order to cause Provident to lose customers, sales, market share and reputation; (4) rejecting Provident's purchase orders in order to cause Provident to lose customers, sales, market share and reputation; and (5) by undertaking efforts to sabotage Provident's business.

(Compl. ¶ 151.) The Complaint notes that the list "include[s], but is not limited to" the listed acts. (Id.) Defendants assert that the absence of the June meeting from this list, and the fact that the meeting did not result in any new deals, alternative agreements, or injury, is evidence that it is not constitutionally reasonable to subject them to jurisdiction in Virginia. Defendants' arguments are persuasive.

The Court fails to see how exercising jurisdiction over Patel and Orit would comport with due process. The only action taken at the meeting was a discussion of possibly renegotiating the contract between the parties, and as discussed above, Defendants failed in their attempt to alter the contract. Because the contract remained intact, there was no injury at the meeting. Moreover, while not dispositive, the Court finds it noteworthy that the parties to the Benzonatate and Metformin contracts—Provident and Amneal—are currently in arbitration proceedings pursuant to their contracts. It stands to reason that allowing Patel and Orit to be sued in a Virginia court, while the actual parties to these contracts pursue alternative dispute resolution, would completely violate due process.

Because Plaintiffs have failed to plead facts which would make jurisdiction over these defendants proper under both the long-arm statute or due process justifications, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

As this Court does not maintain any personal jurisdiction over Patel or Orit, the Defendants' Motion to Dismiss for Failure to State a Claim need not be addressed.

### III. CONCLUSION

For the reasons state above, this Court GRANTS Defendants' Motion to Dismiss based on a Lack of Personal Jurisdiction over Patel and Orit. Accordingly, this matter is DISMISSED as to Satish Patel and Orit Labs.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

                                                    /s/
James R. Spencer
Chief United States District Judge

Entered this  13th  day of November 2008